IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

MISTY ANN GONZALEZ-GUNTER, *Petitioner/Appellee,*

*v.*

BRYAN CHARLES GUNTER, *Respondent/Appellant.*

No. 1 CA-CV 19-0165 FC
FILED 07-23-2020

Appeal from the Superior Court in Maricopa County
No. FC2014-096351
The Honorable Joan M. Sinclair, Judge

**AFFIRMED**

COUNSEL

Misty Ann Gonzalez-Gunter, Queen Creek
*Petitioner/Appellee*

Berkshire Law Office PLLC, Tempe
By Keith Berkshire, Erica L. Gadberry
*Counsel for Respondent/Appellant*

## OPINION

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Diane M. Johnsen[1] joined.

---

**H O W E**, Judge:

**¶1**        Bryan Charles Gunter ("Father") appeals from family court orders apportioning parenting time with his two daughters, born in 2009 and 2010, and requiring him to reimburse Misty Ann Gonzalez-Gunter ("Mother") for expenses she incurred on behalf of the children. Father argues that A.R.S. §§ 25–403.02, –103(B)(1), and  –411(J) require the family court to equally divide parenting time absent a finding of parental unfitness or endangerment. We hold that they do not.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Father and Mother shared equal parenting time and joint legal decision-making of their children pursuant to a 2015 consent dissolution decree. The decree did not order payment of child support by either party.

**¶3**        In July 2017, Father moved to enforce certain money awards made to him in the decree. Mother moved to dismiss his motion, arguing that any money she owed Father should be offset by unreimbursed expenses she had incurred, including expenses for the children's medical and extracurricular activities. In November 2017, Mother moved to modify legal decision-making, parenting time, and child support. Mother alleged that Father had abused drugs and emotionally and verbally abused the children.

---

[1]        Judge Johnsen was a sitting member of this court when the matter was assigned to this panel of the court. She retired effective February 28, 2020. In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge Johnsen as a judge pro tempore in the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to this panel during her term in office.

¶4 Mother also sought temporary orders regarding legal decision-making and parenting time. She asked that the court order Father undergo drug testing and suspend Father's parenting time if he tested positive. After a hearing, the court declined to enter temporary orders, but ordered Father undergo a hair follicle test and appointed a Court Appointed Advisor ("CAA") to investigate Mother's allegations and make recommendations.

¶5 Thereafter, Father underwent a hair follicle test, which came back negative for drug use. The CAA presented a report recommending that Mother be designated as the primary residential parent, Father take a parenting skills course, and both parents enroll in a "high conflict resolution class." The CAA expressed concern that Father had been "less than engaged" with the children and "insensitive to the children's emotional needs." She added that Father "fail[ed] to place the children's needs before his own" and that he allowed his "negative feelings toward Mother to interfere with his ability to co-parent with Mother."

¶6 The court then held an evidentiary hearing on Mother's petition to modify and her reimbursement claims. The CAA testified that Father's parenting skills were not "adequate enough to have extended time with the children." The CAA also testified that the children hesitated to talk about their relationship with Father and that one child was "somewhat fearful" of Father. Mother testified that, over her objection, Father had once taken the children out of state. She also testified that she and Father had difficulty communicating and that "there is always 'backlash.'" Mother supported her reimbursement claims by reading into the record a portion of Father's deposition in which he stated that he would pay "a hundred a month" for each child's gymnastics classes.

¶7 After making relevant best-interests findings under A.R.S. § 25–403(A), the court designated Mother as the primary residential parent and reduced Father's parenting time to the first and third weekends of every month, plus vacation time and some holidays. The court also denied Mother's reimbursement request.

¶8 Mother moved the court to reconsider its reimbursement ruling. After receiving Father's response and Mother's reply, the court noted that Father had agreed at his deposition that he would pay $100 per month per child for gymnastics classes. It therefore found that Mother was entitled to $9,600 in reimbursement from Father for four years of the children's gymnastics expenses. Father timely appealed.

**DISCUSSION**

**1. Interpretation of A.R.S. §§ 25–403.02, –103(B)(1), and –411(J)**

**¶9**         Father argues that the family court erred under A.R.S. §§ 25–403.02, –103(B)(1), and –411(J) in ordering a "lopsided" parenting plan that reduced his parenting time to 72 days a year. He maintains that these statutes mandate 50-50 parenting time absent a finding of parental unfitness or endangerment.[2] We review an order modifying parenting time for an abuse of discretion, *Owen v. Blackhawk*, 206 Ariz. 418, 420 ¶ 7 (App. 2003), but review questions of statutory interpretation de novo, *Palmer v. Palmer*, 217 Ariz. 67, 69 ¶ 7 (App. 2007).

**¶10**         "To determine a statute's meaning, we look first to its text[,]" *State v. Burbey*, 243 Ariz. 145, 147 ¶ 7 (2017), and construe statutes that "relate to the same subject matter or have the same general purpose as one another" as though they constitute one law, *State v. Gamez*, 227 Ariz. 445, 449 ¶ 27 (App. 2011). "When the text is clear and unambiguous, we apply the plain meaning and our inquiry ends." *Burbey*, 243 Ariz. at 147 ¶ 7.

**¶11**         Contrary to Father's contention, A.R.S. § 25–403.02(B) does not mandate equal parenting time absent parental unfitness or endangerment. As relevant here,  the statute provides that "[c]onsistent with the child's best interests . . . , the court shall adopt a parenting plan that provides for both parents to share legal decision-making regarding their child and that maximizes their respective parenting time." A.R.S. § 25–403.02(B). "As a general rule equal or near-equal parenting time is presumed to be in a child's best interests." *Woyton v. Ward*, 247 Ariz. 529, 531 ¶ 6 (App. 2019). The family court, however, has discretion to determine parenting time based on all the evidence before it. *Id.* at ¶ 5.

**¶12**         Father's reliance on A.R.S. § 25–103(B)(1) is also misplaced. Section 25–103(B)(1) provides that as a matter of public policy, absent evidence to the contrary, "it is in a child's best interest . . . [t]o have substantial, frequent, meaningful and continuing parenting time with both parents." That directive does not require equal parenting time or remove the requirement that the court adopt a parenting plan consistent with a

---

[2]         In his reply brief on appeal, Father asserts for the first time that the family court's findings do not support the limited parenting time it awarded him. But we will not consider arguments made for the first time in a reply brief. *See Dawson v. Withycombe*, 216 Ariz. 64, 111 ¶ 91 (App. 2007).

child's best interests. *See* A.R.S. § 25–403(A) (enumerating factors court should consider in determining parenting time in the best interests of child); *see also* A.R.S. § 25–403.02(B) (court shall adopt parenting plan consistent with child's best interests).

**¶13** We also reject Father's argument that A.R.S. § 25–411(J) barred the court from reducing his parenting time in the absence of a finding that his parenting time would seriously endanger the children. Section 25–411(J) provides that the court may "modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child," but "shall not restrict a parent's parenting-time rights unless it finds that the parenting time would endanger the child's physical, mental, moral or emotional health." Father contends that A.R.S. § 25–411(J) permits the family court to reduce a parent's allotted time with a child only if it finds that "parenting time would endanger" the child. But the limitation in § 25–411(J) on the court's power to "restrict . . . parenting time rights" does not apply to a diminution in parenting *time*. Instead, § 25–411(J) refers to the court's power to place conditions on how a parent may exercise his or her "parenting time *rights*" (emphasis added), such as by limiting the manner that parenting time is exercised. *See, e.g., Hart v. Hart*, 220 Ariz. 183, 187, 188 ¶¶ 16, 18 (App. 2009) (holding that endangerment standard applied to order requiring supervised parenting time).

**¶14** Father cites *Higgins v. Higgins*, 194 Ariz. 266 (App. 1999), but that decision is inapposite. *Higgins* held only that a family court abused its discretion in taking judicial notice of the purported fact that one spouse's adulterous cohabitation had a "serious and harmful detrimental effect" on her children because the record lacked evidence supporting that finding. 194 Ariz. at 271-72 ¶¶ 19-21, 25. That case did not decide, however, whether a heightened standard applied to modifying parenting time rights or whether a reduction in the amount of parenting time constitutes a restriction of parenting-time rights pursuant to A.R.S. § 25–411(J).

## 2. Reimbursement Dispute

**¶15** Father argues that he did not agree to retroactively pay $100 per month per child for their gymnastics classes. We review a family court's award of child support for an abuse of discretion and accept its findings of fact unless they are clearly erroneous. *Engel v. Landman*, 221 Ariz. 504, 510 ¶ 21 (App. 2009).

**¶16** Here, the court found that Father had agreed to pay $100 per month per child for gymnastics classes. The record reflects that Father said

during a deposition that he would pay "a hundred a month" or "1200 per year" for each child's gymnastics classes and that his statements were placed on the record in accordance with Arizona Rule of Family Law Procedure 69(a)(2). We accept the court's finding on this issue because it is not clearly erroneous. *See Engel*, 221 Ariz. at 510 ¶ 21. Accordingly, the court did not abuse its discretion in ordering Father to reimburse Mother for the children's gymnastics classes.

¶17 Father counters that his statement did not constitute an enforceable oral agreement under the principles of contract law. This argument is waived because Father raises it for the first time on appeal. *See Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265 ¶ 15 (App. 2004). We similarly reject Father's newfound argument that his statement related only to future gymnastics expenses.

## CONCLUSION

¶18 For the foregoing reasons, we affirm. In our discretion, we deny both parties' requests for attorneys' fees. As the prevailing party, however, Mother is awarded her costs upon compliance with ARCAP 21.

